## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, | |
| Plaintiff, | Case No. 1:18-cv-02474 |
| v. | |
| 8 FIGURE DREAM LIFESTYLE LLC, | **CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| BENJAMIN RUPORT a/k/a COACH BEN, | |
| JERROLD S. MAURER a/k/a JERRY MAURER, | **DEMAND FOR JURY TRIAL** |
| JL NET BARGAINS, INC., | |
| BRIAN KAPLAN, | |
| LUCKY 33 LLC, | |
| ALEX SAMI DOWLATSHAHI, | |
| SPIRIT CONSULTING GROUP INC., | |
| and DOES 1-10, | |
| Defendants. | |

Plaintiff, GEORGE MOORE ("Plaintiff"), on behalf of himself and the proposed classes, by his undersigned counsel, for this complaint against Defendants, 8 FIGURE DREAM LIFESTYLE LLC, BENJAMIN RUPORT, JERROLD S. MAURER, JL NET BARGAINS, INC., BRIAN KAPLAN, LUCKY 33 LLC, ALEX SAMI DOWLATSHAHI, SPIRIT CONSULTING GROUP INC., and DOES 1-10, and their present, former, and future direct and indirect parent companies, subsidiaries, affiliates and agents (collectively, "8 Figure Dream Lifestyle," "8 FDL" or "Defendants"), alleges as follows:

**INTRODUCTION**

1.     Nature of Action. People who have never dreamed of joining 8 Figure Dream Lifestyle's pyramid scheme, including Plaintiff, nevertheless receive its unsolicited telemarketing. The first such call to Plaintiff came on April 1, 2017, but it was no joke. Since then, dozens more déjà vu-inducing prerecorded calls and automated text messages have bombarded him. Mr. Moore now comes before this honorable Court pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, dreaming of a lifestyle free of 8 Figure Dream Lifestyle's unsolicited robocalls.

**PARTIES**

2.     Plaintiff is a natural person and a "person" as defined by 47 U.S.C. § 153(39). He is and at all relevant times has been a citizen of the State of Illinois, residing in this District.

3.     Defendant 8 Figure Dream Lifestyle LLC ("8 FDL LLC") is a limited liability company organized under the laws of the State of Wyoming with its principal place of business at 1712 Pioneer Ave, Suite 500, Cheyenne, Wyoming 82001.

4.     8 FDL LLC does business in this District and throughout the United States.

5.     Defendant Benjamin Ruport a/k/a Coach Ben ("Ruport") is a natural person and a citizen of the State of California.

6.     Defendant Jerrold S. Maurer a/k/a Jerry Maurer ("Maurer") is a natural person and a citizen of the State of New York.

7.     Maurer is one of 8 FDL LLC's senior-most executives.

8.     Defendant JL Net Bargains, Inc. ("JLNB") is a corporation organized under the laws of the State of New York with its principal place of business at 2352 Henry Street, Bellmore, New York 11710.

9.     JLNB's CEO is Defendant Maurer.

10.     Defendant Brian Kaplan ("Kaplan") is a natural person and a citizen of the State of Colorado.

11.     Kaplan is one of 8 FDL LLC's senior-most executives.

12.     Defendant Lucky 33 LLC ("Lucky 33") is a limited liability company organized under the laws of the State of Delaware.

13.     Lucky 33's registered agent is Defendant Kaplan.

14.     Defendant Alex Sami Dowlatshahi (individually "Dowlatshahi" and together with defendants Jerrold Maurer and Brian Kaplan, collectively, the "Founders") is a natural person and a citizen of the State of Texas.

15.     Dowlatshahi is one of 8 FDL LLC's senior-most executives.

16.     On information and belief, defendant Spirit Consulting Group Inc. (individually "Spirit" and together with Defendants JLNB and Lucky 33, collectively, the "Shell Companies") is a corporation controlled by Defendant Dowlatshahi.

17.      The true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein as Does 1-10, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as Does when such identities become known.

18.      Each of the defendants sued herein was the principal, agent, or employee of the other, and was acting within the scope of such agency or employment. Each defendant sued herein was the co-conspirator of the other and was acting within the course and scope of a conspiracy formed amongst each of them. Each defendant sued herein aided and abetted each other with the

3

intent that each would be successful in their mutual endeavors. Each defendant sued herein received money or property as a result of the conduct described herein without consideration therefore and/or with knowledge that the money or property was obtained as a result of the wrongful conduct described herein. Each entity sued herein is a shell organization, and is actually the alter ego of the other defendants sued herein.

19. On information and belief, the Founders knowingly and deliberately undercapitalized 8 FDL LLC relative to its reasonably anticipated and actual liabilities arising from violations of law, including but not limited to the TCPA.

20. On information and belief, revenues and profits from or related to 8 FDL LLC's business were transferred by the Founders into the Shell Companies.

## JURISDICTION AND VENUE

21. <u>Subject Matter Jurisdiction</u>. This Court has federal-question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

22. <u>General Personal Jurisdiction</u>. This Court has general personal jurisdiction over Defendants because they are actively engaged in selling their products throughout Illinois and the United States.

23. <u>Specific Personal Jurisdiction</u>. This Court has specific personal jurisdiction over Defendants because they caused the calls and text messages at issue in this case to be sent to Plaintiff, who lives in Illinois, at phone numbers bearing Illinois area codes.

24. <u>Venue</u>. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims – namely, the receipt of the illegal telemarketing – occurred in this District when Defendants sent these communications to phone

numbers bearing area codes assigned to individuals within this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

25.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

26.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

27.      The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

28.      The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

29.      Additionally, the TCPA outlaws telemarketing to phone numbers on the National Do-Not-Call Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

30.      Among the FCC's Do-Not-Call regulations are requirements that telemarketers maintain a do-not-call policy and list, train their calling staff thereon, and give their name when calling. 47 C.F.R. § 64.1200(d).

31.      The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

5

32.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

33.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used."  *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

34.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing "robocalls" to wireless numbers and residential lines.  In particular:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

35.     FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

36.     The FCC confirmed this principle in 2013, when it explained that "a seller…may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

37.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-52 (9th Cir. 2009).

## FACTUAL ALLEGATIONS

**A.     Plaintiff Placed His Phone Numbers on the National Do-Not-Call Registry.**

38.     Plaintiff owns a phone number ending "3200."

39.     It is on the National Do-Not-Call Registry.

40.     It is assigned to a wireless telephone service.

41.     Plaintiff owns a phone number ending "3205."

42.     It is on the National Do-Not-Call Registry.

43.     It is assigned to a wireless telephone service.

44.     Plaintiff owns a phone number ending "8035."

45.     It is assigned to a residential telephone service.

46.     It is on the National Do-Not-Call Registry.

47.     Plaintiff never gave Defendants prior express written consent to call him.

**B.     8 Figure Dream Lifestyle LLC Runs a Pyramid Scheme.**

48.     Defendant 8 Figure Dream Lifestyle LLC is a multi-level marketing ("MLM") business.

49.     The Founders are its founders and senior-most executives.

50.     These gentlemen have also collaborated on multi-level marketing businesses before 8 FDL.

51.     Unlike MLM businesses that sell a tangible product, 8 FDL primarily sells self-help and marketing materials.

52.     On information and belief, 8 FDL runs the MLM scheme as follows: Targets such

7

as Plaintiff are recruited by "coaches," who sell self-help and marketing materials and encourage their targets to do the same. The main purpose of these materials is to sell the 8 FDL scheme itself to recursive targets. The materials cost up to $22,000. Coaches receive "license fees" from their downstream sellers. 8 FDL survives by the targets selling the same thing they purchased, and so on down the pyramid.

53.     Defendant Ruport is one such coach. Within the 8 FDL universe, he is known as "Coach Ben."

54.     On information and belief, keeping this scheme running requires mass marketing, since, on information and belief, the vast majority of targets do not buy into the 8 FDL scheme. Thus, spam is central to 8 FDL's sales techniques. 8 FDL coaches market via emails, calls, and text messages.

55.     8 FDL's marketing emails make false statements in order to drum up interest in 8 FDL's multi-level marketing scheme.

56.     One of 8 FDL's strategies for marketing its services is placing prerecorded telemarketing calls and sending automated telemarketing text messages to those who have not consented to receive such solicitations, including Plaintiff.

57.      On information and belief, 8 FDL uses equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS").

C.    **Defendants Send Unsolicited Telemarketing and Deceptive Emails to Plaintiff and Others.**

58.     When Plaintiff first heard from 8 FDL, he had never heard of, let alone consented to receiving telemarketing from 8 FDL.

59.    8 FDL had no reason to believe that Plaintiff had consented to receive calls or texts from it.

60.    Nevertheless, on or about April 1, 2017, a telemarketer (that, on information and belief, was 8 FDL) placed a prerecorded telemarketing call to Plaintiff's cellular phone.

61.    The telemarketer allowed Plaintiff to leave his contact information on the caller's voicemail. In an effort to ascertain the identity of the telemarketer, Plaintiff did so.

62.    Later that day, April 1, 2017, Plaintiff received a canned email from "Coach Jerry Roy," advertising https://learntoearn.my8figuredreamlifestyle.com (the "8 FDL Website").

63.    Over the following days and weeks, "Coach Jerry Roy" continued to advertise the 8 FDL Website to Plaintiff via email.

64.    For example, an April 4, 2017 email advertising the 8 FDL Website claimed, regarding an 8 FDL webinar later on April 4: "We currently have 723 people registered and our limit is 500."

65.    A May 20, 2017 email advertising the 8 FDL Website claimed, regarding an 8 FDL webinar later on May 20: "We currently have 723 people registered and our limit is 500."

66.    On information and belief, 8 FDL's April 4, 2017 webinar and May 20, 2017 webinar did not, coincidentally, each have exactly 723 people registered.

**D.    Coaches Use Defendants' Autodialing and Other Marketing Assets with Defendants' Knowledge, Cooperation, and Ratification.**

67.    On information and belief, coaches use 8 FDL assets with Defendants' knowledge, cooperation, and ratification.

68.    For example, the 8 FDL Website advertised by Coach Jerry Roy to Plaintiff is comprised primarily of assets built by Defendants, including testimonial videos, a sign-up form

bearing the 8 FDL eagle icon, and 8 FDL's three "secrets" of wealth creation. The only evident imprint of Coach Jerry Roy is a digital business card in the footer.

69.     As another example, callers left prerecorded voicemails advertising the 8 FDL system on Plaintiff's phone. On information and belief, the voicemails were created and distributed by 8 FDL. An identical prerecorded 8 FDL solicitation that Plaintiff received over a dozen times named neither the called party nor the caller, nor did it state its callback number. Plaintiff therefore inferred that it was produced at a high level within 8 FDL for use by many coaches.

70.     As yet another example, the webinar repeatedly advertised to Plaintiff was, on information and belief, hosted by 8 FDL LLC itself, rather than any individual coach.

71.     On information and belief, 8 FDL LLC makes autodialing equipment available to coaches.

72.     On information and belief, 8 FDL LLC makes prerecorded messages available to coaches.

73.     On information and belief, 8 FDL LLC instructs its coaches, when using 8 FDL's autodialing equipment and prerecorded messages, to hide their affiliation with 8 FDL.

74.     A coach to whom Plaintiff was assigned is Defendant Ruport a/k/a "Coach Ben."

75.     At least three apparently automated text messages, purporting to come from Coach Ben, were sent to Plaintiff advertising an 8 FDL webinar.

76.     The website advertised in one such text message is nearly identical to that advertised by Coach Jerry Roy, including the testimonial videos, a sign-up form bearing the 8 FDL eagle icon, and 8 FDL's three "secrets" of wealth creation. The only evident differentiator is that the digital business card in the footer is that of Coach Ben rather than that of Coach Jerry Roy.

77.     Another website advertised in a promotional text message, purporting to come from

Coach Ben, similarly relies on 8 FDL's assets, including testimonial videos, a sign-up form bearing the 8 FDL eagle icon, and 8 FDL's three "secrets" of wealth creation.

78.    It includes a "Meet the Founders!" section, featuring videos of the following defendants bearing the following titles and captions:

| Defendant Dowlatshahi | Defendant Kaplan | Defendant Maurer |
|---|---|---|
| "The Visionary" | "The Low Key Straight Shooter" | "The Enthusiastic Techie" |
| "Working A [sic] corporate job helping companies scale, Alex started researching online to find a real business he could do from home where he could make $10k in his first 30 days to replace his salary to be home with his fiance! [sic]<br>After all the research, he realized it didn't exist!  So he decided to create it!" | "After owning a pawn shop and having gun [sic] put to his head, Brian was ready to find something safe where he could be home with his 3 kids!<br>He now makes multiple seven figures a year and travels on vacation with his family every quarter!" | "After being involved in many business opportunities, Jerry realized time freedom [sic] was important but he needed something that would work for the long haul! So he took all those years of experience and put it to work in his own online business!" |

**E.    Defendants Make Telemarketing "Robocalls" and Send Telemarketing "Robotexts" Without Prior Express Written Consent, to Numbers on the National Do-Not-Call Registry.**

79.    In total, Defendants placed at least 30 calls (including at least 10 telemarketing text messages) to Plaintiff.

80.    The caller IDs shown on the calls from 8 FDL include:

     a.   (210) 598-5080;

     b.   (253) 318-9197;

     c.   (310) 289-7132;

     d.   (425) 287-5361;

    e.  (425) 287-6315;

    f.  (435) 359-4302;

    g.  (801) 341-9012;

    h.  (916) 226-5122;

    i.  (916) 235-8661;

    j.  (916) 239-3258;

    k.  (916) 553-2645; and

    l.  (916) 613-5794.

81.    On information and belief, 8 FDL uses a wide variety of caller IDs in order to make it harder to block and report its telemarketing efforts.

82.    These calls were for telemarketing purposes.

83.    None of these calls or texts was sent with Plaintiff's prior express written consent.

84.    Most of the calls used a prerecorded voice message.

85.    Several of the calls and texts were made to the "3200" number, which was and still is on the National Do-Not-Call Registry.

86.    At least one of the calls was made to the "3205" number, which was and still is on the National Do-Not-Call Registry.

87.    Many of the calls and texts were made to the "8035" number, including after Plaintiff placed it on the National Do-Not-Call Registry, where it remains.

88.    Plaintiff received many of the calls and texts on his wireless telephone.

89.    All the text messages appeared impersonal. None mentioned facts specific to Plaintiff. Their impersonal nature indicated to Plaintiff that they were sent automatically, not typed out individually by a human.

90. None of the text messages contained an opt-out mechanism.

91. Defendants, and each of them, have been sued in the past for alleged TCPA violations.

92. No emergency necessitated any of the calls or texts.

93. Each call was placed by an ATDS.

94. Each text message was sent by an ATDS.

95. The calls and text messages harassed Plaintiff.

96. The calls and text messages annoyed Plaintiff.

97. The calls and text messages were a nuisance to Plaintiff.

98. On information and belief, Defendants did not have a written do-not-call policy while sending telemarketing calls and text messages to Plaintiff.

99. On information and belief, Defendants did not train their agents engaged in telemarketing on the existence and use of any do-not-call list.

100. Defendants' calls and text messages did not provide Plaintiff with the name of the individual caller or the name of the person or entity on whose behalf the calls were being made.

F. **8 FDL and The Founders Maintained Control over the Activities of Ruport and Other Defendants, Who Are their Agents.**

101. On information and belief, 8 FDL LLC and the Founders maintained control over the activities of Ruport, the other coaches, and the other named and Doe defendants.

102. For example, on information and belief, 8 FDL LLC required coaches to use its goods, services, marketing system, websites, sales collateral and accounting software.

## CLASS ALLEGATIONS

103. Plaintiff brings this action individually and on behalf of all others similarly situated,

13

as a member of the two following proposed classes (the "Classes"), each of which Plaintiff is a member.

a.  The first class (the "ATDS Class") is defined as follows:

Every person within the United States who received any telemarketing call (including text message) from or on behalf of Defendants (or any of them) to the person's cellular telephone made through the use of any automatic telephone dialing system or any artificial or prerecorded voice within the four years before the filing of the initial complaint in this matter.

b.  The second class (the "DNC Class") is defined as follows:

Every person within the United States who, while having been registered on the National Do-Not-Call Registry for at least 30 days, received more than one call made by or on behalf of Defendants (or any of them) that promoted Defendants' goods or services, within any twelve-month period, within four years prior to the filing of the initial complaint in this matter.

104.  <u>Exclusions</u>. Defendants and their employees, agents, immediate family members, parent companies, shareholders and affiliates are excluded from the Classes.

105.  <u>Numerosity</u>. The Classes are so numerous that the individual joinder of all of the members is impractical. While the exact number of Class members is unknown to Plaintiff, Plaintiff is informed and believes and thereon alleges that each Class includes thousands of members. Since the lifeblood of Defendants' pyramid scheme is selling to new recruits in the MLM structure and most people targeted by Defendants' marketing do not buy in, the scheme targets *many* people with robocalls in order to convert a handful to paying members. Plaintiff alleges that Class members may be ascertained by the records maintained by Defendants.

106.  <u>ATDS Class – Injury</u>. Plaintiff and other members of the ATDS Class were harmed, injured and damaged by the acts of Defendants in at least the following ways: Defendants illegally contacted them on their cellular telephones, thereby causing them to incur charges, consume

14

allotted minutes, draw down battery, use up storage space, become distracted from work and play, be harassed, endure a nuisance, fear that people who saw their text messages would mistakenly think them involved in a get-rich-quick scheme, and lose their privacy – the right to be left alone.[1]

107. <u>DNC Class – Injury</u>. Plaintiff and other members of the DNC Class were harmed, injured and damaged by the acts of Defendants in at least the following ways: Defendants repeatedly, illegally solicited them on their telephones on the National Do-Not-Call Registry, thereby causing them to incur charges, consume allotted minutes, draw down battery, use up storage space, become distracted from work and play, be harassed, endure a nuisance, fear that people who saw their text messages would mistakenly think them involved in a get-rich-quick scheme, lose their privacy and feel frustrated that going to the trouble of registering with the federal government's Do-Not-Call list was for naught.

108. <u>ATDS Class – Commonality</u>. Common questions of fact and law exist as to all members of the ATDS Class, including:

    a.    What is the nature of the relationships and agencies between and among the Defendants?

    b.    Are Defendants' calls trying to sell something?

    c.    Do Defendants use an autodialer?

    d.    Is Defendants' voicemail left by a prerecorded voice, or instead by a live person whose consistency is so flawless that he sounds identical every single time?

    e.    Do Defendants have a practice of failing to scrub cell phone numbers from

---

[1] Samuel Warren & Louis Brandeis, *The Right of Privacy*, 4 HARV. L. REV. 193, 193 (summarizing "privacy" as "the right to be left alone").

their calling lists?

    f.   Should Defendants be enjoined from unsolicited robocalling?

109.   <u>DNC Class – Commonality</u>. Common questions of fact and law exist as to all members of the DNC Class, including:

    a.   What is the nature of the relationships and agencies between and among the Defendants?

    b.   Are Defendants' calls trying to sell something?

    c.   Do Defendants have a written do-not-call policy?

    d.   Do Defendants train their telemarketers regarding a do-not-call policy?

    e.   Do Defendants have a practice of failing to scrub National DNC registrants from their calling lists?

    f.   Do Defendants have a practice of telemarketing to people even though Defendants don't have the prior express written consent of, nor a preexisting relationship with, those people?

    g.   Should Defendants be enjoined from unsolicited telemarketing?

110.   <u>ATDS Class – Typicality</u>. As a person who received numerous calls (including text messages) from Defendants using an ATDS and an artificial or prerecorded voice, Plaintiff is asserting claims typical of those of his fellow ATDS Class members.

111.   <u>DNC Class – Typicality</u>. As a person that received numerous solicitation calls from Defendants within a 12-month period, who had not granted Defendants prior express consent and did not have an established business relationship with Defendants, Plaintiff is asserting claims that are typical of those of his fellow DNC Class members.

112.   <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the members

16

of the Classes. Plaintiff has retained attorneys experienced in the prosecution of class actions, including TCPA class actions.

113.    <u>Superiority</u>. A class action is the most efficient way to adjudicate this controversy. The alternative would be thousands of individual lawsuits, a burden on the court system. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each Class member. Because TCPA damages are fixed by statute, mini-trials on actual damages will be unnecessary, making controversy amenable to class-wide resolution.

114.    The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class members to protect their interests.

115.    Defendants have acted or refused to act in respects generally applicable to the Classes, thereby making appropriate final and injunctive relief with regard to the members of the Classes as a whole.

**<u>COUNT I</u>**

**<u>Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)</u>**

**<u>On Behalf of Plaintiff and the ATDS Class against All Defendants</u>**

116.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

117.    The foregoing acts and omissions of Defendants and/or their affiliates or agents

17

constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls (including robotexts) to Plaintiff's cellular telephone number without his prior express written consent.

118.    Plaintiff and each member of the ATDS Class are entitled to an award of at least $500 in damages for each violation, including for each of the 25 violations known to Plaintiff. 47 U.S.C. § 227(b)(3)(B).

119.    Plaintiff and each member of the ATDS Class are entitled to an award of up to $1,500 in damages for each knowing or willful violation, including for each of the 25 knowing or willful violations known to Plaintiff. 47 U.S.C. § 227(b)(3).

120.    Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls without the prior express written consent of the called party.

## COUNT II

### Telemarketing without Mandated Safeguards, 47 C.F.R. § 64.1200(D)

### On Behalf of Plaintiff and the DNC Class against All Defendants

121.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

122.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA and FCC regulations by making telemarketing solicitations to phone numbers listed on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

123.    Moreover, the foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA and FCC regulations by making telemarketing

solicitations despite lacking:

    a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

    b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); and,

    c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).

124.    Plaintiff and each member of the DNC Class are entitled to an award of up to $500 in damages for each violation, including for each of the 30 violations known to Plaintiff. 47 U.S.C. § 227(c)(5)(B).

125.    Plaintiff and each member of the DNC Class are entitled to an award of up to $1,500 in damages for each knowing or willful violation, including for each of the 30 knowing or willful violations known to Plaintiff. 47 U.S.C. § 227(c)(5).

126.    Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations unless they (1) implement a do-not-call policy (including the exclusion of all numbers on the National Do-Not-Call Registry), an internal do-not-call list, and training on both of the foregoing, and (2) include the name of the individual caller and 8 FDL LLC's name in the solicitations.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment on behalf of himself and the Classes against Defendants as follows:

A.     Leave to amend this Complaint to name Does as they are identified and to conform to the evidence presented at trial;

B.     A declaration that Defendants' actions complained of herein violate the TCPA and FCC regulations promulgated thereunder;

C.     An order enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award to Plaintiff and against Defendants, jointly and severally, of $82,500 in statutory damages arising from Defendants' TCPA violations enumerated above;

E.     An award to Plaintiff and the Classes of damages, as allowed by law under the TCPA and FCC regulations promulgated thereunder;

F.     Such further relief as the Court deems necessary, just, and proper.


## JURY DEMAND

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED,

GEORGE MOORE

By:     /s/ David B. Levin
        Attorney for Plaintiff and the Proposed Class
        Illinois Attorney No. 6212141
        Law Offices of Todd M. Friedman, P.C.
        333 Skokie Blvd., Suite 103
        Northbrook, IL 60062
        Phone: (224) 218-0882
        Fax: (866) 633-0228
        dlevin@toddflaw.com

By:     /s/ Todd M. Friedman
        Attorney for Plaintiff and the Proposed Class
        Illinois Attorney No. 6276496
        Law Offices of Todd M. Friedman, P.C.
        21550 Oxnard Street, Suite 780
        Woodland Hills, CA 91367
        Phone: (877) 206-4741
        Fax: (866) 633-0228
        tfriedman@toddflaw.com